# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| CLARENCE McNAIR, | 3:16-cv-00234-RCJ-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| ISIDRO BACA, *et al.*, | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (ECF No. 35). Plaintiff opposed (ECF No. 38), and defendants replied (ECF No. 40). For the reasons stated below, the court recommends that defendants' motion for summary judgment (ECF No. 35) be granted.

## I. FACTUAL BACKGROUND

Clarence McNair ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and is currently housed at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada. Pursuant to 42 U.S.C. § 1983, plaintiff brings two civil rights claims against Correctional Officer Donald Thorpe and Warden Isidro Baca (collectively, "defendants").

### A. Case History

Plaintiff filed his complaint on May 2, 2016. (ECF No. 1-1). In Count I, Plaintiff claims that Thorpe's deliberate indifference to plaintiff's medical needs violated the Eighth Amendment. (*Id.* at 4.) To support this claim, plaintiff alleges the following: Plaintiff is medically confined to a wheelchair and has a medical condition that requires him to use the bathroom facilities more than normal. (*Id.* at 4.) On October 6, 2015, while engaging in outdoor therapy, prison officials locked plaintiff out of his housing unit and deprived him of water and bathroom facilities. (*Id.*) Sometime afterwards, plaintiff informed Thorpe that he needed to use the bathroom. (*Id.*) Thorpe laughed

and "said that plaintiff would go when Thorpe said he could go, and left the door closed." (*Id.*) Consequently, plaintiff tried to refrain from "soiling himself" but it caused him "great pain physically and embarrassment." (*Id.*) Eventually, plaintiff's "bowels released." (*Id.*) In response, Thorpe made plaintiff "wait in his own waste matter while he ridiculed and bullyed [sic] plaintiff." (*Id.*) Thorpe also refused to call medical help or to provide plaintiff with any means to clean himself up. (*Id.*) Additionally, plaintiff alleges that this was not an isolated incident; when the disabled prisoners of Unit Two go outside for therapy, the unit officers frequently lock the doors to the six "ADA-accessible toilets." (*Id.*) (referencing the Americans with Disability Act ("ADA")). Even when these ADA-accessible toilets are made available, it is apparent that they are not compliant with the ADA – a concern also voiced by two of the prison doctors. (*Id.*)

In Count II, Plaintiff alleges a separate Eighth Amendment violation based on the prison's failure to provide plaintiff with adequate access to water. To support this claim, plaintiff alleges the following: Plaintiff and other disabled inmates were deprived of access to water during outdoor therapy and exercise because prison officials locked their housing units. (*Id.* at 5.) The only water source outside of the housing units was located in a dirt field surrounded by a ditch, soft sand, and gravel stones, which is inaccessible to wheelchair-bound inmates. (*Id.*) Thus, plaintiff claims that when Thorpe refused to unlock the unit doors as described in Count I, he denied plaintiff both a bathroom and access to water "suitable for an inmate confined to a wheelchair." (*Id.*) Plaintiff also alleges that the NNCC had a written policy that the unit doors were to remain open for five minutes every hour, but that prison guards often violated this policy. (*Id.* at 5-6). Even though Baca told Plaintiff that there were plans in place to provide better access for disabled inmates, no changes have been made. (*Id.*)

On January 4, 2017, the District Court entered a screening order pursuant to 28 U.S.C. § 1915, and allowed the complaint to proceed. (ECF No. 3.) The court construed both Count 1 and Count II as a single claim that the prison's failure to provide plaintiff with bathroom and water access violated the Eighth Amendment's standard for conditions of confinement. (*Id.* at 5.) Defendants move for summary judgment on the grounds that plaintiff failed to properly exhaust his

administrative remedies prior to filing his complaint.[1] (ECF No. 35). In support, defendants have attached the full grievance history pertaining to plaintiff's claim.

**B.     Grievance History**

On October 12, 2015, plaintiff filed his first, informal grievance against defendants, using NDOC's Informal Grievance form. (ECF No. 35-4 at 3; *see also* ECF No. 38 at 7 (plaintiff's copies of grievance forms)). The grievance alleged that on October 6, 2015, plaintiff tried to enter his assigned housing unit "for the sole and urgent purpose of useing [sic] the bathroom," as it was the only bathroom the prison made available at that time. (ECF No. 38 at 7.) However, plaintiff found that Thorpe had locked the unit, effectively preventing plaintiff from using the bathroom. (*Id.*) As a result, plaintiff urinated himself. (*Id.* at 8.) Thorpe eventually opened the door, and plaintiff confronted him. (*Id.* at 7-8.) During this confrontation, plaintiff told Thorpe that he has a medical condition that requires him to use the bathroom frequently, and that locking inmates out of their assigned housing bathrooms is a violation of NDOC policy. Out of embarrassment, plaintiff did not tell Thorpe that he had urinated himself. (*Id.* at 8.) In response, Thorpe explained that NNCC's "door call policy" required him to keep the assigned housing locked without exception. (*Id.*) Plaintiff claims that Thorpe's action constituted a violation of the Eighth and Fourteenth Amendment. (*Id.*) Plaintiff's informal grievance sought to have Thorpe forbidden from working in plaintiff's unit and to be psychologically evaluated. (*Id.* at 8-9.)

On November 4, 2015, NDOC notified plaintiff that his informal grievance had been forwarded to the Office of the Inspector General for further review, pursuant to NDOC Administrative Regulation ("AR") 740.05-11. (ECF No. 35-4 at 2.) Plaintiff then filed a first-level grievance on November 9, 2015, and requested a formal review of his original grievance because plaintiff believed that the Inspector General "will do nothing one way or another as if a grievance was never filed ...." (ECF No. 35-4 at 5.) NDOC denied plaintiff's first-level grievance on February 11, 2016, and responded that the informal grievance was properly forwarded to the

---

[1] Defendants motion for summary judgment makes brief reference to other grounds for granting summary judgment, but since the court finds that plaintiff failed to exhaust his administrative remedies, it need not discuss defendants' other arguments.

3

Inspector General. Furthermore, NDOC informed plaintiff that pursuant to AR 740, "[t]imeframes are suspended until a disposition is received from the Inspector General's Office." (*Id.* at 4.) On March 4, 2016, plaintiff filed his second-level grievance and requested formal review of the denial of his first-level grievance because he had not heard "a word in regards to this matter" from the Office of the Inspector General. (*Id.* at 7.) On April 18, NDOC returned plaintiff's second-level grievance with a memorandum explaining that he had failed to "attach all necessary documents" — specifically, his "response pages." (*Id.* at 6.) The memorandum directed plaintiff to resubmit his second level grievance with the necessary documents attached, and noted that the failure to do so would constitute abandonment of his grievance. (*Id.*) Plaintiff signed both the returned second-level grievance and accompanying memorandum. (*Id.* at 6-7.)

Plaintiff did not resubmit his second-level grievance; instead, on May 2, 2016, plaintiff filed his civil rights complaint with this court. (ECF No. 1-1 at 1.) Defendants move for summary judgment on the grounds that plaintiff failed to properly exhaust his administrative remedies prior to filing his complaint. This Report and Recommendation follows.

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage,

the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal

knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.   DISCUSSION

#### A.   Failure to Exhaust Administrative Remedies under the PLRA

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id.* at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment is typically the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

**B.     NDOC's Inmate Grievance System**

Administrative Regulation ("AR") 740 governs the grievance process at NDOC institutions. An inmate must grieve through all three levels: (1) Informal; (2) First Level; and (3) Second Level. (*See* ECF No. 35-2 at 2–15.) The inmate may file an informal grievance within six months "if the issue involves personal property damages or loss, personal injury, medical claims or any other tort claims, including civil rights claims." (*Id.* at 6.) The inmate's failure to submit the informal grievance within this period "shall constitute abandonment of the inmate's claim at this, and all subsequent levels." (*Id.* at 7.) NDOC staff is required to respond within forty-five days. (*Id.* at 8.) An inmate who is dissatisfied with the informal response may appeal to the formal level within five days. (*Id.*)

At the first formal level, the inmate must "provide a signed, sworn declaration of facts that form the basis for a claim that the informal response is incorrect," and attach "[a]ny additional relevant documentation." (*Id.*) The grievance is reviewed by an official of a higher level, who has forty-five days to respond. (*Id.* at 9.) Within five days of receiving a dissatisfactory first-level response, the inmate may appeal to the second level, which is subject to still-higher review. (*Id.*) Officials are to respond to a second-level grievance within sixty days, specifying the decision and the reasons the decision was reached. (*Id.*) Once an inmate receives a decision disposing of the second-level grievance, he or she is considered to have exhausted available administrative remedies and may pursue civil rights litigation in district court.

An official grievance response that exceeds the timeframe does not result in an automatic finding for the inmate. (*Id.* at 5.) Rather, AR 740.038 requires the official to complete the response, even if it is overdue. (*Id.*) In turn, the inmate may await the response before appealing, with the applicable timeframe suspended until the inmate receives the overdue response. (*Id.*) Alternatively, the inmate may immediately appeal to the next grievance level without awaiting a response, though this option is not available at the second-grievance level.

C. **Exhaustion of Plaintiff's Claims**

**1. Defendants' Burden of Proof**

Defendants argue that plaintiff did not properly exhaust available administrative remedies as required by the PLRA. (ECF No. 35 at 2, 4-7.)

First, defendants assert that plaintiff failed to grieve his Count II claim that he was deprived of an accessible water source. (ECF No. 35 at 6; ECF No. 40 at 4.) Plaintiff does not dispute that he failed to grieve his lack of access to water. (*See* ECF No. 38.) Both parties have attached to their motions copies of plaintiff's full grievance history while at NNCC. (ECF No. 34-3; ECF 35-4.) The court reviewed plaintiff's grievances and none raises an issue about water access. Accordingly, the court finds that plaintiff failed to exhaust his administrative remedies pursuant to AR 740 prior to bringing his Count II claim of water deprivation in district court. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (an inmate must provide the prison with sufficient notice of "the nature of the wrong for which redress is sought" before litigating his claim).

Next, defendants contend that plaintiff did not properly grieve his Count I claim against Thorpe because the only grievance "that is at all similar" to the complaint tells "a completely different story." (ECF No. 40 at 5.) In their motion for summary judgment, defendants contended that plaintiff's grievance "include[s] no allegation of [plaintiff] soiling himself." (ECF No. 35 at 6.) Plaintiff responded that his grievance provided NDOC with sufficient notice that plaintiff "soil[ed] himself" because it alleged that that he urinated on himself. (ECF No. 38 at 3.) Plaintiff also pointed out that defendants did not have a full copy of plaintiff's grievance, which plaintiff attached to his response. (*Id.*) Defendants maintain that even with the full record at hand, plaintiff

8

deprived NDOC of the "necessary notice required pursuant to *Griffin* and the PLRA" because his grievance does not allege that his bowels released, nor does it allege that Thorpe was aware of plaintiff's incontinence, whether bowel- or bladder-related. (ECF No. 40 at 4-5) (quoting *Griffin*, 557 F.3d at 1120).

The court agrees with defendants that the grievance and complaint are inconsistent. Plaintiff's grievance alleges that he urinated on himself after Thorpe locked him out of the unit bathroom, and that he was too embarrassed to inform Thorpe that he had urinated. (ECF No. 40 at 5.) In contrast, the complaint alleges that Thorpe "ridiculed" plaintiff when his "bowels released" and, after "soiling himself," he had to sit "in his own waste matter" while Thorpe provided plaintiff "with no means to clean himself or to receive medical help." (ECF No. 4 at 4; ECF No. 40 at 5.) Plaintiff's complaint clearly implies that plaintiff defecated on himself, and makes no mention of urination. Assuming that the complaint alleges that plaintiff both defecated and urinated on himself, nothing in the grievance filed with NDOC mentions defecation. Therefore, plaintiff failed to properly exhaust his Count I claim against Thorpe to the extent it is based on allegations that plaintiff's "bowels released" and that he "soil[ed] himself". Moreover, even if plaintiff's allegations that he urinated on himself were properly grieved, plaintiff failed to allege in his grievance that Thorpe "ridiculed" plaintiff for doing so and forced plaintiff to sit "in his own waste matter." Indeed, plaintiff's grievance admits that Thorpe was not even aware that plaintiff urinated on himself because plaintiff was too embarrassed to tell him. Accordingly, the court finds that plaintiff failed to properly exhaust his Count I claim against Thorpe because plaintiff's grievance did not "provide enough information ... to allow prison officials to take appropriate responsive measures." *Griffin*, 557 F.3d at 1120 (quoting *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)).

Finally, defendants argue that plaintiff did not properly exhaust his claims as required by the PLRA because he failed to follow the grievance procedure outlined by AR 740. (*See* ECF No. 37 at 8-10.) Specifically, defendants contend that plaintiff failed to attach necessary documents to his second-level grievance. (ECF No. 35 at 4.) NDOC returned plaintiff's improper second-

1 level grievance with an attached memorandum that required plaintiff to correct and resubmit his
2 grievance. (ECF No. 35-4 at 6,7.) The memorandum also informed plaintiff that his failure to
3 resubmit a proper second-level grievance "shall constitute abandonment." (*Id.* at 6.) In support
4 of their contention, defendants attached every grievance that plaintiff submitted from August
5 2011–January 2017, as well as the corresponding official responses.[2] (ECF No. 34-3; ECF 35-4.)
6 Plaintiff disputes that he failed to properly resubmit his second-level grievance. (ECF No. 38 at
7 2-3.) Plaintiff instead argues that his second-level grievance was properly exhausted once it was
8 returned to him with Assistant Warden Brian Ward's signature and a response – even if the
9 response notified plaintiff that his second-level grievance was improper. (*Id.* at 2.)

As defendants point out, NDOC's response to plaintiff's second-level grievance – on which he stakes his claim of exhaustion – plainly and unambiguously notifies him that his second-level grievance is improper, and, thus, unexhausted. (ECF No. 35-4 at 6.) The second-level grievance form, DOC-3094, requires plaintiff to declare that "all supporting documentation is attached for review." (ECF No. 35-4 at 6.) However, NDOC rejected plaintiff's second-level grievance because he failed to attach his "response pages" from previous levels of review. (ECF No. 35-4 at 6.) Both parties attached the second-level grievance that was returned to plaintiff, which shows that officials left blank all three possible determination checkboxes; instead, "DOC-3098" was written in the response section and directed plaintiff to the attached memorandum, which is written on form DOC-3098. (*Id.* at 6,7). The memorandum has "Improper Grievance" in its subject line followed by plaintiff's grievance log number, and it states that the second-level grievance was returned to plaintiff for failing to "attach all necessary documents when submitting a grievance." (*Id.* at 6.) It directs plaintiff to resubmit his grievance and it notes that the failure to do so would result in abandonment of his claim. (*Id.*) No reasonable jury could find that plaintiff's grievance was exhausted as returned when considering the clear directives of the

---

[2] In plaintiff's first response to defendants' motion for summary judgment, plaintiff argues that defendants failed to attach the continuation pages that plaintiff had included in his informal grievance, and in doing so, "intentionally hid or impeded relavent [sic] documents …" (ECF No. 38 at 3). In their reply, defendants apologize, and clarify that NNCC's record keeping policy "only requires archiving of the first page of each grievance level." Both parties subsequently attached the full record, so the court's analysis is not affected.

10

memorandum stating otherwise, as well as the conspicuously blank determination checkboxes. Finally, plaintiff admits that he read and understood NDOC's request that he resubmit his grievance. (ECF No. 38 at 2.) Plaintiff simply cannot, on the one hand, claim that he believed he completely exhausted the grievance process, while admitting, on the other hand, that the last communication he received was a request for him to act. Defendants' exhibit clearly demonstrates that plaintiff failed to comply with NDOC's "critical procedural rules." *Woodford*, 548 U.S. at 90–91 (exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings").

Defendants have met their burden of showing that plaintiff failed to properly exhaust his administrative remedies pursuant to AR 740 prior to initiating this action. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) ("If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.")

**2. Plaintiff's Burden of Proof**

The burden now shifts to plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). As far as the court can discern, plaintiff asserts two arguments to support his position that administrative remedies were effectively unavailable.

First, plaintiff contends that the prison officials handling his grievance "exploit[ed] the exhaustion requirement through indefinite delay" by forwarding plaintiff's grievance to the Office of the Inspector General to conduct a staff misconduct investigation, after which plaintiff was "never" contacted again. (ECF No. 38 at 2) (quoting *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005)). In *Brown v. Valoff*, the Ninth Circuit consolidated two inmate civil right cases concerning whether the inmates, Hall and Brown, properly exhausted their administrative remedies. The court found that Hall failed to meet the PLRA's exhaustion requirement primarily because he "did not await the completion of the staff misconduct investigation before filing his complaint in district

court." *Valoff*, 422 F.3d at 943. Prison inmates must give a reviewing agency "a full opportunity to investigate the complaint and to develop an understanding of the facts underlying it." *Id.* Here, plaintiff, like Hall, was required to wait for the staff misconduct investigation to conclude before bringing his claim in district court, even if it would "substantially expand the time required to exhaust" NDOC's available administrative remedies.[3] *See Id.* at 940-43.

Plaintiff's second argument is less clear, but he appears to argue that he exhausted his remedies prior to filing because prison officials lacked authority to act on plaintiff's grievance after they forwarded the grievance to the Office of the Inspector General. (*Id.* at 3.) Again, plaintiff cites to *Valoff*, where the court found that prison officials lacked the authority to provide Brown with a remedy because "investigation and consideration of [his] grievance had been directed, in their entirety, to the staff complaint process." *Valoff*, 422 F.3d 940. However, the court held that Brown had exhausted his administrative remedies only after the staff complaint process was completed; an inmate must give "the process to which his complaint was directed a full opportunity to develop the facts and reach a conclusion." *Id.* at 942; *see id.* at 936 ("[A]waiting the results of investigations triggered by the grievance process but outside of it can serve the purposes of the exhaustion requirement."). Here, regardless of whether prison officials at the second-level grievance stage had authority to act on plaintiff's grievance, the Inspector General had the authority to remedy plaintiff's dispute with Thorpe and other NNCC staff pursuant to AR 740.082. (ECF No. 35-2 at 10.) However, plaintiff did not provide the Inspector General with a "full opportunity" to reach a determination; instead, he filed his complaint just two months after NDOC's first-level response notified plaintiff that his grievance "was forwarded to the Inspector General's Office." (ECF No. 35-4 at 2, 3, 7.) Unlike Brown, plaintiff cannot show that administrative remedies were unavailable to him. *Valoff*, 422 F.3d 942.

---

[3] AR 740 states that "timeframes are suspended until a disposition is received from the Inspector General's Office," so plaintiff would not have been prejudiced in providing the Inspector General's Office ample time to conclude their investigation and correct the prison's mistakes. (ECF 35-2 at 7); *see Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

The court concludes that defendants met their burden of demonstrating that plaintiff failed to exhaust available administrative remedies prior to filing this action. The court further concludes that plaintiff did not meet his burden of providing "evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (internal quotations omitted). Thus, the court recommends that defendants' motion for summary judgment should be granted.

## IV. CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that defendants' motion for summary judgment (ECF No. 35) be granted.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING** Defendant Thorpe's and Defendant Baca's Motion for Summary Judgment (ECF No. 35).

Plaintiff's cross-motion for summary judgment (ECF No. 39) should be **DENIED AS MOOT**.

DATED: October 4, 2017

UNITED STATES MAGISTRATE JUDGE